1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  FREDERICK TATUM,                    No. 2:14-CV-1622-CMK

12              Plaintiff,

13       vs.                           <u>MEMORANDUM OPINION AND ORDER</u>

14  COMMISSIONER OF SOCIAL
    SECURITY,

15              Defendant.

16  _____/

17

18          Plaintiff, who is proceeding with retained counsel, brings this action under

19  42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

20  Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

21  judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

22  before the court are plaintiff's motion for summary judgment (Doc. 19) and defendant's cross-

23  motion for summary judgment (Doc. 22).

24  / / /

25  / / /

26  / / /

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on September 19, 2008.  In the application, plaintiff claims that disability began on November 25, 1995.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an on-the-record decision.  In a February 3, 2012, decision Administrative Law Judge ("ALJ") Carol L. Buck concluded that the plaintiff is not disabled.

The Appeals Council granted review and, on August 21, 2012, issued a decision remanding the matter for further proceedings.  A second hearing was held before the same ALJ on January 8, 2013.  In a March 27, 2013, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant did not have any severe impairment(s) on or before March 31, 1998, for purposes of benefits under Title II;

2. The claimant has the following severe impairment(s) for purposes of benefits under Title XVI: personality disorder, schizophrenia, substance abuse, obesity, and sleep apnea;

3. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

4. The claimant has the following residual functional capacity: the claimant can perform medium work except the claimant is limited to simple repetitive tasks (unskilled work) in a non-public setting with no more than occasional contact (up to 1/3 of the day) with supervisors or co-workers; he is precluded from tandem work; and

5. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on June 20, 2014, this appeal followed.

/ / /

/ / /

/ / /

/ / /

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### III. DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ erred in concluding that he had no severe impairment or combination of impairments prior to March 31, 1998; and (2) the ALJ erred in failing to consider the "C" criteria of Listing 12.03.

### A.      Severity of Impairments Prior to March 31, 1998

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).[1]  In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.  See id.

/ / /

/ / /

/ / /

---

[1]      Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

Regarding the Title II period of disability through March 31, 1998, the ALJ stated:

The claimant alleges a disability onset date of November 25, 1995.  In September 1997, the claimant underwent a competency evaluation by Martha Mahaffrey, Ph.D.  Dr. Mahaffrey diagnosed a schizoaffective disorder, with current symptoms of accelerated mood, derailment, and persecutory delusions.  She found that the claimant was competent to stand trial, but not competent to assist his counsel in his defense.  This report also referred back to psychiatric records in 1995, but did not include or describe them in detail (Exhibit 19F, pages 108 to 112a).

The claimant underwent a brief hospitalization from October 26, 1997, until October 29, 1997.  The hospitalization was related to a knife wound in the abdomen.  Upon presentation in the emergency room, the claimant was noted to be uncooperative.  He insisted that his rights were being violated and he exhibited paranoia.  A witness stated that he had been using illegal drugs.  He underwent laparoscopic repair of his abdomen and was subsequently released (Exhibit 1F).

The claimant underwent an evaluation at the California Department of Corrections.  He arrived in February 1998 and was evaluated on March 2, 1998.  At that time, mental status examination findings were normal except some reported mood disturbance and some sleep disturbance.  His affect was somewhat restricted.  However, he was cognitively intact and there were no psychotic symptoms.  He was diagnosed as having an adjustment disorder with depressed mood.  His global functioning was rated at 72, denoting mild symptoms and limitations.  On April 11, 1998, shortly after the date last insured of March 31, 1998, there was a brief note that the claimant reported stress insomnia.  There was no evidence of psychotic symptoms, no suicidal ideation, and mental status examination findings were normal.  He was diagnosed as having an adjustment reaction (Exhibit 19F, pages 222 to 224, 275).

Regarding the claimant's allegations of a physical impairment, in March 1998, there was a brief note about back and neck pain, but there were no findings, diagnosis, or treatment notes (Exhibit 19F, pages 276, 277).

The record contains no further evidence for the Title II period at issue.  State agency sources concluded that there was insufficient evidence to establish a severe impairment for the Title II period at issue (Exhibits 7F, 9F).  At the hearing, the medical expert reviewed the record and concluded that there was no data upon which to determine that the claimant was disabled during the Title II period at issue.  These opinions are given great weight because they are consistent with the minimal evidence contained in the record for the Title II period at issue.

The ALJ noted that additional evidence existed which was not reviewed by the agency doctors or medical expert:

However, it is noted that the State agency sources and the medical expert did not review the evidence from Exhibit 19F, detailed above.  In addition, the medical expert testified that there was no additional evidence, after the date last insured, until 2005.  However, additional evidence received after the hearing contain some brief, scattered treatment notes for 2000 through 2004 which were not seen by the medical expert (Exhibit 19F, pages 100-104, 138-221, 252-255, 266-274).  The records after March 31, 1998, are not directly relevant to the period at issue, but have been mentioned only because the gap in treatment or findings was not as long as the medical expert had stated.

Despite the additional evidence that was presented after the hearing, the record continues to support a conclusion that on or before March 31, 1998, the claimant did not have a medically determinable physical impairment, and did not have a medically determinable mental impairment that was severe for any continuous 12 month period or expected to be severe for a 12 month period.  In this regard, as shown above, the claimant's treatment was sparse and intermittent.  Although some diagnoses were made, there is no evidence of severe limitations related to these disorders during the period at issue.  In fact, in March 1998, the claimant had a global functioning rating of 72 denoting no more than mild limitations or symptoms.  His only diagnosis at that time was an adjustment disorder, which was consistent with the fact that he had recently been incarcerated.  This type of diagnosis is not expected to last any 12 month period.  It is noted that although the claimant had a previous diagnosis of a psychotic disorder in 1997, there was no evidence of this in 1998.  Moreover, later records suggest that the claimant tended to exaggerate his symptoms.  The record contains no evidence to support more than mild limitations in activities of daily living; social functioning; or concentration, persistence, and pace during the Title II period at issue.  The record is also insufficient to establish that the claimant had any episodes of decompensation for an extended period.

Accordingly, it is found that for the Title II period at issue, the record does not provide evidence to establish that the claimant had a severe medically determinable impairment that lasted, or would be expected to last, for a continuous 12 month period.

Plaintiff argues:

The ALJ noted that State Agency sources concluded insufficient evidence to establish a severe impairment and that the medical expert at the hearing concluded there was no data upon which to determine that the claimant was disabled during the Title II period at issue, though she did note the State Agency did not have all the records, nor did the hearing medical expert.  The ALJ further noted that the prison intake in March 1998 diagnosed adjustment disorder with depressed mood and a GAF of 72.

The ALJ is incorrect as to the sufficiency of the evidence to establish a severe impairment. [Eight] different doctors at [six] different medical offices all diagnosed Tatum with some level of paranoia or

1  depression.  The State Agency sources and the hearing expert did not have
2  the full record.  Without the full record, their opinions are incomplete.
   The ALJ could have sent each the supplemental record and asked for an
3  updated opinion.

4      As plaintiff accurately observes, the ALJ has an independent duty to fully and

5  fairly develop the record and assure that the claimant's interests are considered.  See Tonapetyan

6  v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  When the claimant is not represented by counsel,

7  this duty requires the ALJ to be especially diligent in seeking all relevant facts.  See id.  This

8  requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all

9  the relevant facts."  Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978).  Ambiguous evidence or

10 the ALJ's own finding that the record is inadequate triggers this duty.  See  Tonapetyan, 242 F.3d

11 at 1150.  The ALJ may discharge the duty to develop the record by subpoenaing the claimant's

12 physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping

13 the record open after the hearing to allow for supplementation of the record.  See id. (citing

14 Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

15     The court does not agree that the ALJ failed to discharge this duty.  As indicated

16 above, the duty is triggered only when the evidence is ambiguous, or the ALJ specifically finds

17 that the record is inadequate.  Neither is the case here.  The record was not ambiguous; it was

18 almost non-existent.  Further, the ALJ never found the record to be inadequate.  Rather, the ALJ

19 found the record adequate to conclude that plaintiff had not met his burden of establishing the

20 severity of his alleged impairments.  See 20 C.F.R. §§ 404.1508, 416.908.

21     Plaintiff's statement that eight doctors at six medical offices "all diagnosed Tatum

22 with some level of paranoia or depression" is unavailing.  Evidence that a disorder has been

23 diagnosed is not evidence that the disorder causes more than minimal limitations.  It is plaintiff's

24 obligation to provide evidence of functional limitations, and he has failed to do so.

25  **B.    "Paragraph C" Criteria**

26     The Social Security Regulations "Listing of Impairments" is comprised of

1    impairments to fifteen categories of body systems that are severe enough to preclude a person

2    from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20

3    C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are

4    irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all

5    the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.

6    1985).  Where there is a colorable claim of mental impairment, the regulations require the ALJ to

7    follow a special procedure.  See 20 C.F.R. §§ 404.1520a(a), 416.920a(a).  The ALJ is required to

8    record pertinent findings and rate the degree of functional loss.  See 20 C.F.R. §§ 404.1520a(b),

9    416.920a(b).

10              In this case, the ALJ considered whether plaintiff's colorable claim of a mental

11   impairment satisfies the "paragraph C" criteria of Listing 12.03.  The ALJ stated:

12              The undersigned has also considered whether the "paragraph C" criteria
               are satisfied.  In this case, the evidence fails to establish the presence of
13              the "paragraph C" criteria.  The claimant does not require a highly
               structured and supportive environment for adequate functioning.  He has
14              not had repeated extended episodes of decompensation.  In addition, a
               minimal change in the claimant's environment would not be expected to
15              result in deterioration in his condition or decompensation.  Moreover, the
               claimant is not totally unable to function outside the home independently.
16              This conclusion is supported by the testimony of Dr. Akins who stated that
               the "C" criteria were not met.

17

18   Plaintiff argues:

19              Tatum certainly had a history of 1 or more years' inability to
               function outside a highly supportive living arrangement.  He was living in
20              prisons, jails, or hospitals for all but 5 months of the time period from
               1998 to the hearing date in 2014 and not for a single offense, but for
21              multiple serious violent offenses.  Napa State Hospital doctors noted that
               Tatum cannot manage his impulses to achieve his goals and noted that he
22              has failed to conform to social norms for 18 years.  Dr. Wadsworth noted
               that Tatum was a high risk for long term violence.  He noted that Tatum,
23              when confronted with facts/data that undermine his self-perception of
               unlimited power/brilliance, may react with disdain, rage, counterattack,
24              devaluation, and irritability.  CDCR doctors noted when Tatum was
               incarcerated and treating was stable on his current medications with his
25              impulse control intact.

26

1  Once again, plaintiff contends that the ALJ failed to fully develop the record.

2          The court is not persuaded by plaintiff's novel argument that his lengthy periods

3  of incarceration, which resulted from plaintiff having committed a string of violent crimes,

4  constitutes a highly supportive living environment.  The regulations contemplate a living

5  environment which would greatly reduce mental demands.  As defendant notes: "Prison is hardly

6  a 'highly supportive' environment for individuals with mental health issues – quite the contrary."

7  As defendant also observes, plaintiff "was not in prison because he needed structure, but as

8  punishment for committing violent crimes" (emphasis in defendant's brief).  The court agrees

9  with defendant that it "strains reason to suggest all prisoners have necessarily proven an element

10 of a mental disorder simply by virtue of their incarceration."  In any event, plaintiff's mental

11 disorder cannot be considered disabling because, as plaintiff concedes, it was well-controlled

12 with medication.

13

14                    **IV.  CONCLUSION**

15          Based on the foregoing, the court concludes that the Commissioner's final

16 decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

17 ORDERED that:

18              1.      Plaintiff's motion for summary judgment (Doc. 19) is denied;

19              2.      Defendant's cross-motion for summary judgment (Doc. 22) is granted; and

20              3.      The Clerk of the Court is directed to enter judgment and close this file.

21

22  DATED:  March 23, 2016

23

24  **CRAIG M. KELLISON**
    UNITED STATES MAGISTRATE JUDGE

25

26

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26